Jimmy Alan HESTER *v.* STATE of Arkansas

CR 04-875 208 S.W.3d 747

Supreme Court of Arkansas
Opinion delivered May 19, 2005

374

*Montgomery, Adams & Wyatt, PLC*, by: *Dale E. Adams*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

J<small>IM</small> H<small>ANNAH</small>, Chief Justice. In a bench trial before the Pulaski County Circuit Court, Sixth Division, appellant Jimmy Alan Hester was convicted of one count of possession of pseudoephedrine with intent to manufacture methamphetamine, one count of manufacture of a controlled substance (methamphetamine), one count of possession of a controlled substance with intent to deliver (methamphetamine), one count of possession of drug paraphernalia with intent to manufacture methamphetamine, and one count of maintaining a drug premises. For those offenses, the circuit court sentenced Hester to a total of thirty years' imprisonment and imposed fines in the amount of $5,000.

On appeal, Hester argues that the circuit court erred in denying his motion to suppress evidence found pursuant to a search warrant because the knock-and-talk procedure employed

by the police resulted in an illegal seizure of his person in violation of his rights under the Fourth Amendment of the United States Constitution and Article 2, § 15 of the Arkansas Constitution. Alternatively, he argues that the knock-and-talk procedure used by the police should be declared unconstitutional *per se* under Article 2, § 15 of the Arkansas Constitution. Hester also argues that the affidavit for search warrant contained insufficient facts to establish probable cause. Finally, Hester contends that the circuit court erred in denying his motion to dismiss his convictions of possession of pseudoephedrine with intent to manufacture methamphetamine and possession of drug paraphernalia with intent to manufacture methamphetamine because both of those offenses are lesser-included offenses of manufacture of methamphetamine.

This case was certified to this court by the court of appeals; our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(d)(1) and (2). We affirm.

*Facts*

The facts given in this case are taken from Little Rock Police Detective Greg Siegler's affidavit supporting a search warrant. A confidential informant told Siegler that Hester was manufacturing methamphetamine at Hester's residence located at 4330 Highway 165, in North Little Rock. The informant told Siegler that he observed glassware and several chemicals inside the residence on January 27, 2002, and that two empty apartments located directly behind the residence contained components and chemicals to manufacture methamphetamine.

Acting on this information, Siegler and other Little Rock police officers, along with members of the Pulaski County Sheriff's Department Narcotics detail and members of the North Little Rock Police Department, went to Hester's residence on January 29, 2002, at approximately 11:30 a.m. Siegler stated that while at the residence, detectives smelled a strong chemical odor coming from the residence and the two vacant apartments at the rear of the house. Siegler and other officers knocked on the front door of the residence, and Hester answered. The officers requested Hester's consent to search the residence, and Hester refused. After Hester refused consent to search, the scene was secured, and Hester was not allowed to go back into his home for some four hours while the police obtained a search warrant.

Kim Moore was also at the residence. When Hester answered the door, Moore exited the residence and began talking to

Detective Ken Blankenship of the Little Rock Police Department. According to Siegler, Moore told Blankenship that she had arrived at Hester's residence earlier in the day and that she and Hester had smoked methamphetamine while they were inside the home. Siegler also stated that Moore said she saw inside the house approximately one-half gram of methamphetamine, numerous pieces of drug paraphernalia, and a large chemical can.

Based on this information, District Judge Lee Munson issued a search warrant that authorized a search of the "residence, curtilage and vehicles located at 4330 Hwy. 165, 4330 Hwy. 165, Apartment 'A,' and 4330 Hwy. 165, Apartment 'B,' North Little Rock, Pulaski County, Arkansas, and occupied by Jimmy Hester." Siegler and other law enforcement officers executed the warrant at approximately 3:30 p.m., on January 29, 2002; they seized methamphetamine, pseudoephedrine, and various items of drug paraphernalia.

*Motion to Suppress*

 Prior to trial, Hester filed a motion to suppress, contending that the search of his residence and the vacant apartments was unlawful and that evidence seized as a result of that search should be suppressed. When reviewing the circuit court's ruling on a motion to suppress evidence from a search, this court conducts a *de novo* review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *Walley v. State*, 353 Ark. 586, 112 S.W.3d 349 (2003). We defer to the circuit court in assessing the credibility of witnesses. *Scott v. State*, 347 Ark. 767, 67 S.W.3d 567 (2002).

 A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. Ark. R. Crim. P. 2.2(a) (2004). The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request. *Id.* In making a request pursuant to this rule, no law enforcement officer shall indicate that a person is legally obligated to furnish information or to otherwise cooperate if no such legal obligation exists. Ark. R. Crim. P. 2.2(b) (2004). Compliance with the request for information or other cooperation hereunder shall not

be regarded as involuntary or coerced solely on the ground that such a request was made by a law enforcement officer. *Id.*

In Arkansas, "knock and talk" is a label for a procedure that is defined as follows:

> Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's "castle" *with the honest intent of asking questions* of the occupant thereof whether the questioner be a pollster, a salesman, or an officer of the law.

*Keenom v. State*, 349 Ark. 381, 387, 80 S.W.3d 743, 746 (2002) (quoting *Davis v. United States*, 327 F.2d 301, 303 (9th Cir. 1964)). During a knock-and-talk, a police officer may approach a person's residence to ask questions related to an investigation without probable cause or reasonable suspicion. *See McDonald v. State*, 354 Ark. 216, 223-24, 119 S.W.3d 41, 46 (2003). As a general rule, where consent is freely and voluntarily given, the knock-and-talk procedure has been upheld as a consensual encounter and a valid means to request consent to search a house. *See Griffin v. State*, 347 Ark. 788, 67 S.W.3d 582 (2002).

Hester contends that he was illegally seized during the knock-and-talk procedure because after refusing consent, he was denied reentry into his home for some four hours. To support this proposition, Hester cites *Keenom, supra*. In that case, police arrived at Keenom's mobile home at 11:30 p.m. to question him about alleged methamphetamine manufacturing. Before the officers knocked on the door, Keenom stepped outside to meet them. One of the detectives asked Keenom for permission to search his trailer, and Keenom refused consent. Keenom, who was barefoot and wearing only a pair of jeans when the officers arrived, suggested to the police that they leave and come back in ten minutes, but they responded that they could not do that. The officers remained and continued to question Keenom.

During the questioning, Keenom requested to go inside because it was storming and cold, but the police refused to let him return to his trailer. After an unspecified amount of questioning, Keenom admitted that he had a quarter gram of methamphetamine in his trailer and that he had allowed others to rent his residence for

use in manufacturing methamphetamine. Detectives then arrested Keenom for conspiracy to manufacture methamphetamine. Based upon the information obtained during the knock–and–talk procedure, the officers obtained a search warrant. As a result of the search, the officers reported finding weapons, drug paraphernalia, and lab materials, and Keenom was subsequently charged with manufacturing methamphetamine and simultaneous possession of drugs and firearms.

In *Keenom*, we concluded that under the totality of the circumstances in the case, the officers exceeded the inherent limitations of the knock–and–talk procedure. The officers' "persistence in the face of appellant's efforts to terminate the encounter and his request that the officers leave, resulted in his being seized in violation of his Fourth Amendment rights." *Keenom*, 349 Ark. at 390, 80 S.W.3d at 748. Further, we stated that "[s]uch prolonged questioning, leading as it did to appellant's unsuccessful attempts to return to the safety and solitude of his house, would surely lead a reasonable person to believe that he could not ignore the officers." *Id.*, 80 S.W.3d at 748. This court went on to state that the search warrant executed in the case was based upon the statements made by appellant to the officers following his illegal seizure and, thus, the fruits of the warrant were poisoned by the officers' unlawful conduct in seizing the appellant. *Id.* at 391, 80 S.W.3d at 748. Accordingly, this court concluded that the appellant was deprived of his Fourth Amendment rights and the evidence should have been suppressed. *Id.*, 80 S.W.3d at 749.

The State contends that the instant case is distinguishable from the *Keenom* case. We agree. In the instant case, police officers had probable cause to disallow reentry into the premises after their conversation with Moore, whereas in the *Keenom* case, Keenom was questioned outside his residence for an unspecified amount of time and denied reentry into his home *prior* to there being established probable cause for the presence of contraband that would likely be destroyed by Keenom if he were allowed to reenter the residence.

The State contends, and we agree, that the instant case is factually similar to *Illinois v. McArthur*, 531 U.S. 326 (2001). In that case, Tera McArthur requested that two police officers accompany her to the trailer where she lived with her husband Charles, so that they could keep the peace while she removed her belongings. The two officers, Chief John Love and Officer Richard Skidis, arrived with Tera at the trailer. She went inside, where Charles was

present, but the officers remained outside. After collecting her belongings, Tera emerged from the trailer and spoke to Love, who was then on the porch. She suggested that he check the trailer because "Chuck had dope in there." *Id.* at 329. Love said that Tera further told him that she had seen Charles "slid[e] some dope underneath the couch." *Id.*

Love knocked on the trailer door, told Charles what Tera had said, and asked Charles for permission to search the trailer, which Charles denied. Love then sent Skidis to get a warrant, and he told Charles, who was now also on the porch, that he could not reenter his trailer unless accompanied by a police officer. Charles subsequently entered the trailer a few times to get cigarettes and to make phone calls. Each time Charles entered the trailer, Love stood just inside the door to observe what Charles did.

Later, Skidis returned with the warrant, and he and other officers searched the trailer and found a small amount of marijuana and drug paraphernalia. Charles moved to suppress the evidence seized during the search on the ground that it was the "fruit" of an unlawful police seizure, namely, the refusal to let him enter the trailer unaccompanied, which would have permitted him, he said, to "have destroyed the marijuana." *Id.* The trial court granted Charles's suppression motion. The Appellate Court of Illinois affirmed, 304 Ill. App. 3d 395, 713 N.E.2d 93 (1999), and the Illinois Supreme Court denied the State's petition for leave to appeal, 185 Ill.2d 651, 720 N.E.2d 1101 (1999). The United States Supreme Court granted certiorari and reversed the decision of the Illinois Appellate Court.

■ The Court concluded that the temporary seizure of Charles was reasonable and not violative of the Fourth Amendment. The Court explained:

> We conclude that the restriction at issue was reasonable, and hence lawful, in light of the following circumstances, which we consider in combination. First, the police had probable cause to believe that McArthur's trailer home contained evidence of a crime and contraband, namely, unlawful drugs. The police had an opportunity to speak with Tera McArthur and at least make a very rough assessment of her reliability. They knew she had had a firsthand opportunity to observe her husband's behavior, in particular with respect to the drugs at issue. And they thought, with good reason, that her report to them reflected that opportunity. *Cf. Massachusetts v. Upton*, 466 U.S. 727, 732-34 (1984) *(per curiam)* (upholding search warrant issued in similar circumstances).

Second, the police had good reason to fear that, unless restrained, McArthur would destroy the drugs before they could return with a warrant. They reasonably might have thought that McArthur realized that his wife knew about his marijuana stash; observed that she was angry or frightened enough to ask the police to accompany her; saw that after leaving the trailer she had spoken with the police; and noticed that she had walked off with one policeman while leaving the other outside to observe the trailer. They reasonably could have concluded that McArthur, consequently suspecting an imminent search, would, if given the chance, get rid of the drugs fast.

Third, the police made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy. They neither searched the trailer nor arrested McArthur before obtaining a warrant. Rather, they imposed a significantly less restrictive restraint, preventing McArthur only from entering the trailer unaccompanied. They left his home and his belongings intact — until a neutral Magistrate, finding probable cause, issued a warrant.

Fourth, the police imposed a restraint for a limited period of time, namely, two hours. *Cf. Terry v. Ohio, supra,* at 28 (manner in which police act is "vital . . . part of . . . inquiry"). As far as the record reveals, this time period was no longer than reasonably necessary for the police, acting with diligence, to obtain the warrant. . . . Given the nature of the intrusion and the law enforcement interest at stake, this brief seizure of the premises was permissible.

*McArthur,* 531 U.S. at 331-33.

A similar conclusion may be reached in the instant case. Here, acting on a tip from a confidential informant, officers went to question Hester about the manufacturing of methamphetamine, and Hester denied consent to search. However, the officers were able to speak to Moore, who confirmed that there was methamphetamine and drug paraphernalia inside the residence. The tip from the informant, coupled with the information from Moore, gave the police probable cause to believe that Hester's residence contained evidence of a crime. Like the officers in *McArthur,* the officers in this case had a good reason to fear that unless restrained, Hester would destroy evidence. They reasonably might have thought that Hester observed Moore speaking to the officers, and that he was aware that Moore allowed the officers to search her vehicle and accompany her to her home in order to conduct a

search there. The officers reasonably could have concluded that Hester, suspecting an imminent search, would get rid of the methamphetamine and drug paraphernalia if given the opportunity.

Further, the police officers made efforts to reconcile their law enforcement needs with the demands of personal privacy. Hester's residence was not searched until the officers obtained a search warrant. The restraint, denying Hester entry to his residence, was imposed for a limited period of time. We are not persuaded by Hester's argument that the instant case is distinguishable from *McArthur* because in that case, the appellant was charged with misdemeanor crimes and was restrained for only two hours, whereas the instant case "involves much more serious charges and an outright ban from entering his home for some four hours." The *McArthur* Court did not suggest that the search of the trailer would have been violative of the Fourth Amendment had Charles been charged with a crime "more serious" than a misdemeanor or had the temporary seizure exceeded two hours. Moreover, there is nothing to suggest that police officers in the instant case did not act with diligence in obtaining the warrant.

The holding in *McArthur* is applicable to the instant case. There, the Court held:

> In sum, the police officers in this case had probable cause to believe that a home contained contraband, which was evidence of a crime. They reasonably believed that the home's resident, if left free of any restraint, would destroy that evidence. And they imposed a restraint that was both limited and tailored reasonably to secure law enforcement needs while protecting privacy interests. In our view, the restraint met the Fourth Amendment demands.

*McArthur*, 531 U.S. at 337.

Still, Hester states that even if *McArthur* is applicable, this court should declare the knock-and-talk procedure unconstitutional *per se* under Article 2, § 15 of the Arkansas Constitution. We do not address this point on appeal because Hester fails to develop any argument on the issue. This court does not research or develop arguments for appellants. *See, e.g., Hathcock v. State*, 357 Ark. 563, 182 S.W.3d 152 (2004).

## Sufficiency of Affidavit for Search Warrant

Hester argues that there was insufficient evidence to establish probable cause for the issuance of the search warrant for his residence. First, Hester alleges a *Franks* violation. *See Franks v. Delaware*, 438 U.S. 154 (1978). He contends that the affidavit for the search warrant contained a false statement concerning the reliability of the confidential informant. This court has recognized that under *Franks*, a warrant should be invalidated if a defendant shows by a preponderance of the evidence that: (1) the affidavit contained a false statement that was made knowingly, intentionally, or recklessly by the affiant; and (2) the false statement was necessary to a finding of probable cause. *Langford v. State*, 332 Ark. 54, 962 S.W.2d 358 (1998); *Echols v. State*, 326 Ark. 917, 950, 936 S.W.2d 509, 525 (1996), *cert. denied*, 520 U.S. 1244 (1997) (citing *Franks*, 438 U.S. at 155-56). We have further recognized that, if such findings are made, the *Franks* test requires that the false material should be excised and the remainder of the warrant examined to determine if probable cause still exists. *Langford, supra; Echols, supra*. If the truthful portion of the warrant makes a sufficient showing of probable cause, the warrant will not be invalidated. *Langford, supra; Echols, supra*.

Rule 13.1(b) of the Arkansas Rules of Criminal Procedure provides that "[i]f an affidavit or testimony is based in whole or in part on hearsay, the affiant or witness shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained." Rule 13.1(b) further provides that "failure to establish the bases of knowledge of the confidential informant is not a fatal defect 'if the affidavit viewed as a whole provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in particular places.' " *Langford*, 332 Ark. at 61, 962 S.W.2d at 362; *Heard v. State*, 316 Ark. 731, 736-37, 876 S.W.2d 231, 234 (1994) (quoting *State v. Mosley*, 313 Ark. 616, 622, 856 S.W.2d 623, 626 (1993)).

In this case, Hester claims that the affidavit falsely states that the confidential informant "has provided information pertaining to the manufacture of methamphetamine on at least one other occasion that has been proven true and correct by other means." Hester claims that Siegler's statement was false because Siegler admitted that the information given by an informant on a

previous occasion did not result in an arrest or conviction. Hester reasons that without proof of an arrest or conviction, Siegler could not truthfully state that the informant had provided accurate information about methamphetamine manufacturing in the past. We disagree. In *Franks*, the United States Supreme Court discussed the meaning of "truthfulness" in an affidavit, stating:

> This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

438 U.S. at 165.

At the suppression hearing, Siegler testified that he had confirmed the reliability of the informant when other information supplied by him had been verified by another police agency. The State contends that while Siegler's statement concerning the reliability of the informant may be somewhat conclusory, the statement accurately portrays Siegler's belief regarding the informant's reliability, and Siegler's belief was not shown to be false. We agree. Hester has failed to show that Siegler made a false statement "knowingly and intentionally or in reckless disregard of the truth." *Langford*, 332 Ark. at 62, 962 S.W.2d at 363 (quoting *Heritage v. State*, 326 Ark. 839, 846, 936 S.W.2d 499, 503 (1996)). We do agree that Siegler failed to set forth particular facts bearing on the informant's reliability. However, we do not believe this defect is fatal because the affidavit viewed as a whole provides a substantial basis for a finding of reasonable cause to believe that methamphetamine and drug paraphernalia would be found in Hester's residence and the two vacant apartments.

Hester next claims that the affidavit's reference to Moore's statement that she "smoked methamphetamine" and saw approximately one-half gram of methamphetamine and numerous pieces of drug paraphernalia inside the residence did not support an inference that Hester was manufacturing methamphetamine. We disagree, and we are unpersuaded by Hester's contention that Moore's statement could support only an inference of methamphetamine possession and use. Siegler stated in the affidavit that

based on his experience, he believed the items described to him by the confidential informant and Moore were used in the manufacture of methamphetamine. We believe that the information contained in the affidavit could support an inference that Hester was manufacturing methamphetamine.

Finally, Hester contends that the statement in the affidavit about the chemical smell is a false statement in violation of *Franks* because Siegler could not identify who told him of the smell. In the affidavit, Siegler stated that officers "could smell a strong chemical odor omitting [sic] from the residence and the two small vacant apartments at the rear of the house." At the suppression hearing, Siegler testified that he remembered that other officers told him they smelled a strong chemical odor; however, he said that he did not smell it. Officer Michael Terry testified that he "noticed a heavy smell" coming from one of the apartments located at the rear of the house. Hester has failed to show that Siegler knowingly made a false statement about the chemical smell. In fact, Terry's testimony supports Siegler's testimony that the presence of a chemical smell was detected.

We do note that the presence of a heavy chemical odor, by itself, does not constitute probable cause. *See, e.g., Walley, supra*; *Bennett v. State*, 345 Ark. 48, 44 S.W.3d 310 (2001). However, this fact, along with the information from Moore and the confidential informant provided a substantial basis for the magistrate to conclude that probable cause existed when he issued the search warrant. *See, e.g., State v. Rufus*, 338 Ark. 305, 993 S.W.2d 490 (1999).

*Lesser-Included Offenses*

On the first day of trial, Hester filed a motion to dismiss the charges of possession of drug paraphernalia with intent to manufacture methamphetamine and possession of pseudoephedrine with intent to manufacture methamphetamine on the grounds that these offenses were included within the offense of manufacture of methamphetamine. Hester argues here, as he did below, that conviction of both the manufacturing charge and the possession charges would constitute double jeopardy.

Section 5-1-110(a)(1) (Repl. 1997) provides:

When the same conduct of a defendant may establish the commission of more than one (1) offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense if:

(1) One offense is included in the other, as defined in subsection (b) of this section; . . .

Section 5-1-110(b) (Repl. 1997) provides in relevant part:

(b) A defendant may be convicted of one offense included in another offense with which he is charged. An offense is so included if:

(1) It is established by proof of the same or less than all the elements required to establish the commission of the offense charged; . . .

It is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance, such as methamphetamine. *See* Ark. Code Ann. § 5-64-401. "Manufacture" is defined in relevant part as:

the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container, except that this term does not include the preparation or compounding of a controlled substance by an individual for his own use. . . .

Ark. Code Ann. § 5-64-101(m) (Repl. 1997).

Pursuant to Ark. Code Ann. § 5-64-1102(a)(1) (Supp. 2003), it shall be unlawful for a person to possess . . . pseudoephedrine. . . with intent to manufacture methamphetamine. Section 5-64-403(c)(5) (Supp. 2003) provides that it is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to manufacture methamphetamine. The term "drug paraphernalia" is defined in relevant part as:

all equipment, products, and materials of any kind which are used, intended for use, or designed for use, in . . . propagating, . . .

manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of . . . the Controlled Substances Act. . . .

Ark. Code Ann. § 5-64-101(v) (Repl. 1997).

The State contends that the offense of manufacturing methamphetamine necessarily addresses an event that has already happened. The possession of two separate classifications of ingredients *with the intent* to manufacture methamphetamine, according to the State, speaks to an event in the future. We agree.

The instant case was a bench trial. However, Arkansas Model Jury Instructions — Criminal set out what the State must prove for each offense. To sustain the charge of manufacturing methamphetamine, the State must prove beyond a reasonable doubt that the defendant *knowingly* or *purposely produced, prepared, propagated, compounded, converted,* or *processed* either directly or indirectly by extraction from substances of natural origin or by means of chemical synthesis, *packaged* or *repackaged* or *labeled* or *relabeled* a container of *methamphetamine. See* AMI Crim. 2d 6405 (emphasis added).

To sustain the charge of possession of pseudoephedrine with the intent to manufacture methamphetamine, the State must prove beyond a reasonable doubt that the defendant *possessed pseudoephedrine* and that the defendant did so with the *intent to manufacture methamphetamine. See* AMI Crim. 2d 6416 (emphasis added). To sustain the charge of possession of drug paraphernalia with the intent to manufacture methamphetamine, the State must prove beyond a reasonable doubt that the defendant *knowingly used* or *possessed with the intent to use drug paraphernalia* to *manufacture methamphetamine. See* AMI Crim. 2d 6418.2 (emphasis added).

In *Craig v. State,* 314 Ark. 585, 863 S.W.2d 825 (1993), we held that possession of a controlled substance is a lesser-included offense of the manufacture of a controlled substance because the offense of possession of a controlled substance contains no element that is different from that of manufacturing. In *Cothren v. State,* 344 Ark. 697, 42 S.W.3d 543 (2001), the appellant, citing our decision in *Craig,* contended that possession with intent to deliver a controlled substance was a lesser-included offense of the manufacture of a controlled substance. We disagreed, stating:

> . . . Mr. Cothren was not convicted of simple possession. Mr.
> Cothren was convicted of possession *with intent to deliver.* Based
> upon the language of the statute excepting the preparation or
> compounding of a controlled substance for an individual's own use,
> Mr. Cothren argues that the intent to deliver is a required element
> of manufacturing a controlled substance as defined by section
> 5-64-101(m). We disagree. In order to convict Mr. Cothren of
> the offense of manufacturing a controlled substance, the statute
> requires the State to prove that he was engaged in the production,
> preparation, propagation, compounding, conversion, or processing
> of a controlled substance. Ark. Code Ann. § 5-64-101(m). . . .
>
> Possession with intent to deliver requires no such proof. Ark. Code
> Ann. § 5-64-401. Furthermore, as stated above, a conviction for
> manufacturing does not require proof of intent to deliver, an
> element essential to a conviction for possession with intent to
> deliver. *Id.* Because the two offenses for which Mr. Cothren was
> convicted each require the proof of an element not common to the
> other, possession with intent to deliver is not a lesser-included
> offense of manufacturing a controlled substance. Ark. Code Ann.
> § 5-1-110.

*Cothren*, 344 Ark. at 706-07, 42 S.W.3d at 549.

In the instant case, to convict Hester of manufacturing
methamphetamine, the statute requires the State to prove that he
was engaged in the production, preparation, propagation, com-
pounding, conversion, or processing of methamphetamine. Pos-
session of pseudoephedrine with intent to manufacture metham-
phetamine requires no such proof. Likewise, possession of drug
paraphernalia with intent to manufacture methamphetamine re-
quires no such proof.

Further, a conviction for manufacture of methamphetamine
does not require proof of possession of pseudoephedrine with
intent to manufacture methamphetamine, essential elements to a
conviction for possession of pseudoephedrine with intent to
manufacture methamphetamine. Nor does a conviction for manu-
facture of methamphetamine require proof that a person know-
ingly used or possessed with intent to use drug paraphernalia to
manufacture methamphetamine, essential elements to a conviction
for possession of drug paraphernalia with intent to manufacture
methamphetamine.

In sum, the possession offenses at issue each require
proof of elements not common to the manufacturing offense at

issue. Likewise, the manufacturing offense requires proof of an element not common to the possession offenses. Accordingly, we conclude that possession of pseudoephedrine with intent to manufacture methamphetamine and possession of drug paraphernalia with intent to manufacture methamphetamine are not lesser-included offenses of the manufacture of methamphetamine. We hold that the circuit court did not err in denying Hester's motion to dismiss.

Affirmed.