SLIP OPINION

Cite as 2015 Ark. 363

# SUPREME COURT OF ARKANSAS

No. CR-15-153

| | |
|---|---|
| BRIAN ELAM SIMS<br>APPELLANT | **Opinion Delivered** October 8, 2015 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CR-12-263] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE HERBERT THOMAS WRIGHT, JUDGE |
| | AFFIRMED. |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellant Brian Elam Sims appeals the order entered by the Pulaski County Circuit Court denying his petition for postconviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure. For reversal, Sims contends that the circuit court erred in rejecting his seven claims of ineffective assistance of counsel and by denying his petition without a hearing. We affirm on all issues.

I. *Factual Background*

The prosecuting attorney in Pulaski County charged Sims with the offenses of first-degree murder, second-degree battery, and aggravated assault. Sims's first trial ended in a mistrial after it was discovered that his attorney had been suspended from the practice of law. The record of the second trial reflects that the charges stemmed from an incident that occurred on September 24, 2011, at the Rock City Lounge in Little Rock. According to the testimony, Sims and his wife, Charleena Sims, were at the bar for a birthday celebration with

Charleena's sister, Hannah Monroe; Hannah's boyfriend, Chris Martis; and Chris's aunt and uncle, Michelle and Rodney Brazeal. Robert Cauley was an acquaintance of the bartender, Tina Powell, and Robert arrived at the lounge with his friend, Thomas Jones, at approximately 1:30 a.m. to help Tina close the bar.

At closing time, Robert and Thomas were in the kitchen eating pizza when they heard a commotion outside the bar. By all accounts, Charleena was causing a disturbance. The witnesses described her as "belligerent," and "out of control" and said that she was yelling and screaming, cussing at everyone, "throwing legs and arms," beating on the windows, and kicking the door of the bar. Robert, who stood six-feet tall and weighed 258 pounds, approached Charleena from behind and "bear hugged" her. With Hannah's help, Robert carried Charleena to the Simses' vehicle and placed her inside. Tina testified that she saw Sims walk down the sidewalk carrying a knife cupped in his hand and held behind his back.

Thomas testified that Robert remained at the Sims's vehicle in a kneeling position and that he appeared to be conversing with someone inside the car. Thomas stated that Sims approached Robert from the rear and struck Robert on either his shoulder or his neck. Upon seeing this altercation, Thomas ran toward the Simses' vehicle and found Sims on top of and straddling Robert, as Robert lay on his back on the ground. Thomas testified that Sims was stabbing Robert, as Robert pleaded for Sims to stop. Thomas intervened, during which time Sims stabbed Thomas. Thomas testified that he placed his left hand on Sims's shoulder and said that Sims struck upwards twice, hitting Thomas's hand and his arm.

Rodney also observed Robert in a crouched position beside the Simses' car. He

testified that Sims was behind Robert and that he saw Sims swing at Robert, striking Robert in the lower back. Like Thomas, Rodney ran to the area, observed Sims on top of Robert, and saw Sims stabbing Robert. Rodney also testified that Robert was asking Sims to stop stabbing him. Rodney dislodged the knife from Sims's hand and threw Sims backwards. Rodney secured the knife, and he, Thomas, and others tended to Robert's wounds.

In her testimony, Hannah stated that she walked to her car after putting Charleena in the vehicle. She next saw Rodney running in the direction of the Simses' vehicle. Hannah said that she did not know who was driving the Simses' vehicle, but she testified that the vehicle backed up and stopped before leaving the parking lot. She stated that Sims and Charleena exited the car and that they took turns waving a gun at the crowd. Hannah testified that both Sims and Charleena pointed the gun at her.

Robert died at the hospital days later. Dr. Charles Paul Kokes, the chief medical examiner, testified that the cause of death was multiple stab wounds. Specifically, Robert had been stabbed seven times. He received two stab wounds to the right upper chest; one in the lower left side of the chest; one to the lower left side of the back; another to the middle of the back; one to the back right shoulder; and lastly, one to the back side of the right thigh.

Sims testified and asserted that he had killed Robert, whom he did not know, in self-defense. Sims said that he noticed a crowd around his vehicle when he walked out of the bar. He denied that he saw Robert carry Charleena to their vehicle. Sims stated that Charleena was seated in the front passenger seat when he reached the car and that he was standing beside the driver's side door and about to get inside to leave, when someone struck him in the head.

He testified that the blow knocked him to the ground and that, when he looked up, he saw a "humongous" man coming down upon him. Sims said that he feared for his and his wife's lives and that he retrieved a knife from his back pocket and began swinging upward. He did not recall anyone else touching him and had no recollection of stabbing Thomas. Sims stated that he was able to roll to the side after the last time he struck Robert and that someone pushed Robert off of him. He said that no one took the knife from him and that he immediately got into his car to leave. Sims denied having a firearm in his hand at any time.

A jury in the Pulaski County Circuit Court found Sims guilty as charged of first-degree murder, second-degree battery, and aggravated assault. As a consequence, he received an aggregate term of thirty-three years' imprisonment. The court of appeals affirmed his convictions and sentences. *Sims v. State*, 2014 Ark. App. 312. Thereafter, Sims filed a timely, verified petition for postconviction relief claiming that he had received ineffective assistance of counsel at trial. In his petition, Sims alleged that counsel's performance was deficient because he failed to request various jury instructions. He also claimed that his counsel was ineffective with respect to his handling of evidentiary issues.[1] The circuit court entered an order denying the petition without a hearing. Sims now appeals, challenging the circuit court's findings and the court's failure to hold a hearing.

II. *Standards of Review*

On review, we assess the effectiveness of counsel under the two-prong standard set

---

[1]Although Sims raised a number of other issues in his petition, he does not advance those issues on appeal. Therefore, those issues are considered abandoned. *Houghton v. State*, 2015 Ark. 252, 464 S.W.3d 922.

SLIP OPINION

forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *Springs v. State*, 2012 Ark. 87, 387 S.W.3d 143. In asserting ineffective assistance of counsel under *Strickland*, the petitioner must show that counsel's performance was deficient. *Williams v. State*, 2011 Ark. 489, 385 S.W.3d 228. This requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the petitioner by the Sixth Amendment. *State v. Rainer*, 2014 Ark. 306, 440 S.W.3d 315. The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Scott v. State*, 2012 Ark. 199, 406 S.W.3d 1. The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Wertz v. State*, 2014 Ark. 240, 434 S.W.3d 895.

In order to satisfy the second prong of the *Strickland* test, the petitioner must show that counsel's deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Montgomery v. State*, 2011 Ark. 462, 385 S.W.3d 189. In doing so, the petitioner must show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *State v. Harrison*, 2012 Ark. 198, 404 S.W.3d 830. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Adams v. State*, 2013 Ark. 174, 427 S.W.3d 63. In assessing prejudice, courts "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. There is no reason for a court deciding

an ineffective-assistance claim to address both components of the inquiry if the defendant makes an insufficient showing on one. *Decay v. State*, 2014 Ark. 387, 441 S.W.3d 899.

### III. *Jury Instructions*

The first four issues that Sims raises on appeal concern jury instructions. He contends that the circuit court erred in concluding that his trial counsel was not ineffective by failing to offer proper instructions. We address his arguments in order.

### A. *Fincham* and Extreme-Emotional-Disturbance Manslaughter

As his first point on appeal, Sims contends that counsel neglected to ensure that a complete instruction on extreme-emotional-disturbance manslaughter was provided to the jury. The circuit court granted Sims's request, that in addition to instructions on first-and second-degree murder, to give an instruction on the lesser-included offense of extreme-emotional-disturbance manslaughter. A person commits this category of manslaughter if he causes the death of another person under circumstances that would be murder, except that he causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse. Ark. Code Ann. § 5-10-104(a)(1)(A) (Repl. 2013).

Sims's trial took place in the wake of our decision in *Fincham v. State*, 2013 Ark. 204, 427 S.W.3d 643, where we held that the standard step-down provision of the AMI Crim. 2d 301 instruction on lesser-included offenses effectively foreclosed the jury's consideration of extreme-emotional-disturbance manslaughter. Thus, we agreed with Fincham's argument that the circuit court should have omitted the following language when instructing the jury:

> If you have a reasonable doubt of the guilt of the defendant on the greater offense, you may find him guilty only of the lesser offense. If you have a

reasonable doubt as to the defendant's guilt of all offenses, you must find him not guilty.

In so holding, we reasoned that, under the instruction as it was then constituted, the jury was instructed not to consider the lesser-included offense of extreme-emotional-disturbance manslaughter unless it first found reasonable doubt as to greater murder offenses. Yet, a defendant could be found guilty of extreme-emotional-disturbance manslaughter only if the jury had first found him guilty of murder. Given this conundrum, we said that "the jury should have been instructed to consider manslaughter after it found Fincham guilty of murder." *Fincham*, 2013 Ark. 204, at 8, 427 S.W.3d at 648. In concluding the opinion, we urged the Committee on Criminal Jury Instructions to consider revising the instruction so that future juries may be properly instructed when considering extreme-emotional-disturbance manslaughter.

Sims's trial took place one month after our decision in *Fincham* and before the committee had the opportunity to revise our jury instructions. At the instruction conference at Sims's trial, the court and counsel discussed *Fincham* and crafted an instruction to follow the ones on first- and second-degree murder. The instruction stated,

> If you find Brian Sims guilty of first degree murder or second degree murder, you will then consider the charge of manslaughter.

> To sustain this charge, the State must prove beyond a reasonable doubt that: Brian Sims caused the death of Robert Cauley under circumstances that would be murder, except that he caused the death under the influence of extreme emotional disturbance for which there was a reasonable excuse. You should determine the reasonableness of the excuse from the viewpoint of a person in Brian Sims's situation under the circumstances as he believed them to be.

In his Rule 37.1 petition and in his argument on appeal, Sims contends that the

instruction was incomplete, and thus his counsel performed deficiently, because it omitted his burden that he was only to raise a reasonable doubt in the minds of the jurors. He also claims that counsel was deficient for not elaborating on this point during closing argument. Sims bases this contention on AMI Crim. 2d 1004-A, a completely new instruction that was adopted in 2013 after his trial. This new instruction is to be given in conjunction with AMI Crim. 2d 1004, the primary instruction on manslaughter, and it reads as follows:

> The law provides that if a person commits the offense of murder, but does so under the influence of extreme emotional disturbance for which there is reasonable excuse, that person has committed the offense of manslaughter rather than murder. You must determine reasonableness from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.

> (Defendant*), in asserting the defense of extreme emotional disturbance, is required only to raise a reasonable doubt in your minds.* Consequently, if you believe that this defense has been shown to exist, or if the evidence leaves you with a reasonable doubt as to his guilt of murder rather than manslaughter, you may find him guilty only of manslaughter.

> Whatever may be your finding as to this defense, you are reminded that the State still has the burden of establishing the guilt of (defendant) upon the whole case beyond a reasonable doubt.

(Emphasis supplied.)

Sims argues that his counsel was ineffective for not asking for an instruction that contained the italicized language noted above and for not discussing it in closing argument. We cannot agree. In determining whether trial counsel's conduct is ineffective, the conduct is evaluated from counsel's perspective at the time of trial. *Strickland*, *supra*. The instruction that was given at trial complied with this court's ruling in *Fincham*. Although the new instruction, AMI Crim. 2d 1004-A, is a product of *Fincham*, the language Sims now desires

was not dictated by that decision. We simply cannot say that counsel was ineffective for not having the foresight to predict all revisions to the instructions that were not directly mandated by our decision. Consequently, we affirm on this point.

## B. Reckless Manslaughter

Here, Sims contends that counsel was ineffective because he did not seek an instruction on the lesser-included offense of manslaughter that is committed when a person recklessly causes the death of another person. *See* Ark. Code Ann. § 5-10-104(a)(3). This argument is without merit based on our well-established "skip rule," which provides that when an instruction on a lesser-included offense has been given, and the jury convicts of the greater offense, error resulting from the failure to give an instruction on another still lesser-included offense is cured. *Davis v. State*, 2009 Ark. 478, 348 S.W.3d 553. The jury in Sims's trial received instructions on first-degree murder and the lesser-included offense of second-degree murder. Because the jury returned a guilty verdict on the greater offense of first-degree murder, Sims cannot establish that prejudice resulted from counsel's failure to request an instruction on yet another lesser-included offense. *Kennedy v. State*, 338 Ark. 125, 991 S.W.2d 606 (1999).

To the extent that Sims's argument includes the contention that trial counsel should have pursued an instruction pursuant to Arkansas Code Annotated section 5-2-614(a) (Repl. 2013), the "imperfect-defense statute," we note that the circuit court did not provide a ruling on this argument. It is the obligation of an appellant to obtain a ruling from the circuit court in order to preserve an issue for appellate review. *Kelley v. State*, 2011 Ark. 175 (per curiam);

*McCraney v. State*, 2010 Ark. 96, 360 S.W.3d 144 (per curiam); *Beshears v. State*, 340 Ark. 70, 8 S.W.3d 32 (2000). Arkansas's rules of procedure provide an avenue for an appellant to obtain a ruling from the circuit court should the court fail to rule on an issue in its initial order. Ark. R. Crim. P. 37.3 (2009); *Beshears*, *supra*. Sims did not avail himself of that procedure. Therefore, the failure to obtain a ruling precludes our review of this argument on appeal. *Huddleston v. State*, 347 Ark. 226, 61 S.W.3d 163 (2001).

### C. Justification and Lesser-Included Offenses

In this argument, Sims asserts that his counsel rendered deficient performance for not requesting a justification instruction with regard to the charges of second-degree battery and aggravated assault. To show prejudice under *Strickland* based on trial counsel's failure to request a specific instruction, the United States Supreme Court has held that an appellant must establish that it was "reasonably likely that the instruction would have made any difference [in the outcome of the trial] in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010). In this case, the jury rejected Sims's claim of self-defense. Therefore, it is highly unlikely and most improbable that the outcome of the trial would have been different had counsel requested a justification instruction with respect to those offenses. Because Sims has failed to demonstrate prejudice flowing from this allegation, the circuit court's decision on this matter is not clearly erroneous.

Sims also argues that counsel was ineffective for not seeking lesser-included-offense instructions with respect to aggravated assault and second-degree battery. Our law is settled that once an offense is determined to be a lesser-included offense, the circuit court is obligated

to instruct the jury on that offense only if there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the lesser-included offense. *Webb v. State*, 2012 Ark. 64. With regard to aggravated assault, trial counsel was not remiss for failing to seek a lesser-included-offense instruction because Sims's defense to that charge was complete denial. Where the evidence clearly shows that the defendant is either guilty of the greater offense charged or innocent, there is no rational basis for giving an instruction on lesser-included offenses. *Fudge v. State*, 341 Ark. 759, 20 S.W.3d 315 (2000); *Brown v. State*, 321 Ark. 413, 903 S.W.2d 160 (1995); *Watson v. State*, 308 Ark. 444, 825 S.W.2d 569 (1992).

As for a lesser-included-offense instruction on the charge of second-degree battery, Sims's brief merely recites the conclusory allegation that counsel's failure to request such an instruction was ineffective assistance. However, he does not cite authority in support of that argument, nor does he otherwise develop the issue by referring to any facts contained in the record that would provide a rational basis for an instruction. Sims had the burden of demonstrating that there was a rational basis for the instruction. *Mathis v. State*, 2014 Ark. 148 (per curiam); *Davis v. State*, 2011 Ark. 433 (per curiam). This court does not research or develop arguments for appellants. *Hester v. State*, 362 Ark. 373, 208 S.W.3d 747 (2005). Bare assertions of ineffectiveness are not enough. *Mitchell v. State*, 2012 Ark. 242. Conclusory statements that counsel was ineffective will not sustain a Rule 37 petition. *Anderson v. State*, 2011 Ark. 488, 385 S.W.3d 783. Accordingly, we find no merit here.

### D. Defense of a Third Party

As his next point on appeal, Sims complains that, although he received an instruction

SLIP OPINION

on self-defense for defending himself, he contends that counsel neglected to include a justification instruction for the defense of a third party, namely his wife. Sims asserts that he would have been entitled to such an instruction based on his testimony that he feared not only for his own life but also for that of his wife, who was sitting in the car. Once again, we must observe that the jury did not accept his theory of self-defense. Therefore, it is improbable and most unlikely that the jury would have believed that he was acting in defense of his wife. Thus, Sims has failed to show a reasonable likelihood that the outcome of trial would have been different had this instruction been given.

## IV. *Evidentiary Matters*

Sims's final three arguments concern claims of ineffectiveness with regard to evidentiary issues. We also discuss these points in turn.

### A. Evidence of the Deceased's Violent Character

Sims contends that his trial counsel's performance was deficient because he failed to present evidence of the deceased's character for violence. In making this argument, he states that Robert had been previously convicted of third-degree domestic battery.

Where it is asserted that counsel was ineffective for failure to make a motion or argument, the petitioner must show that the motion or argument would have been meritorious because the failure to make an argument that is meritless is not ineffective assistance of counsel. *Mitchell*, *supra*. Our law is clear that specific instances of a victim's violent character are admissible only when the acts were directed at the defendant or within his knowledge. *Anderson v. State*, 354 Ark. 102, 118 S.W.3d 574 (2003); *Allen v. State*, 2013

Ark. 396; *Thompson v. State*, 306 Ark. 193, 813 S.W.2d 249 (1991); *Halfacre v. State*, 277 Ark. 168, 639 S.W.2d 734 (1982). Here, Sims did not know Robert. Therefore, the testimony was not admissible, and counsel's failure to offer this evidence did not fall below an objective standard of reasonableness.

Alternatively, Sims asserts that, even if the evidence was not initially admissible, the State opened the door for the admission of the testimony when the prosecution elicited testimony from Rodney that Robert was a "big teddy bear." Thus, he contends that his counsel was ineffective for not seizing on the opportunity to admit evidence of Robert's violent nature. The record does not support this contention. Rodney testified that he knew of Robert as the bartender's friend but that he did not know Robert, or even his name. More to the point, the prosecutor did not question Rodney about Robert's character. Instead, the prosecutor asked Rodney to describe Robert's demeanor when Robert escorted Charleena to her car. Rodney responded, "[L]ike maybe a big teddy bear. Just, you know, everything sweet and nice and stuff like that." This testimony merely described Robert's demeanor and thus did not place Robert's character in issue. Because the prosecution did not open the door, counsel was not remiss for not offering character evidence.

### B. References to the Deceased's Son

Next, Sims contends that he received ineffective assistance when trial counsel failed to seek an admonition or to move for a mistrial when Rodney testified that, as he and his wife were tending to Robert's wounds, Robert said to them, "You know, I have a son, and I want you to tell my son that I love him." Sims points out that Tina gave similar testimony without

13

objection and that the prosecutor referred to the testimony in closing argument.

The record reflects that Sims's trial counsel opposed the introduction of statements made by Robert to others after he had been stabbed, and the circuit court overruled Sims's objections. The record also shows that, although counsel maintained a standing objection to Robert's remarks, counsel raised a specific objection to Rodney's testimony concerning Robert's son. In denying Sims's petition for postconviction relief, the circuit court found that, although a request for an admonition might have been successful, counsel's choice not to request an admonition was a matter of trial strategy based on the desire not to call further attention to the comment. The circuit court also found that the decision not to request a mistrial was also a matter of trial tactics and strategy. Further, the court determined that "considering the prompt objection, the extraordinary nature of mistrials, and the possibility that failure would have drawn further attention to the statement, the court is not prepared to say that the choice not to move for a mistrial was ineffective assistance of counsel."

We have said many times that the decision not to request an admonition is largely a matter of trial strategy. *Camargo v. State*, 346 Ark. 118, 55 S.W.3d 255 (2001); *Buckley v. State*, 341 Ark. 864, 20 S.W.3d 331 (2000); *Catlett v. State*, 331 Ark. 270, 962 S.W.2d 313 (1998) (per curiam). Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. *Mister v. State*, 2014 Ark. 446; *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000). Under the circumstances here, the trial court was not clearly erroneous in finding that the decision was one of trial strategy, or in finding that the decision not to call further

attention to the remark by seeking an admonition was supported by reasonable professional judgment. Moreover, Sims has not shown that the strategy was outside the bounds of reasonable professional judgment or that there was a ground for a mistrial, which is an extreme and drastic remedy to be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing the trial. *Ellis v. State*, 2014 Ark. 24 (per curiam) (citing *Green v. State*, 2013 Ark. 497, 430 S.W.3d 729). In fact, Sims offers no argument that the testimony was even inadmissible. Once again, we must observe that we do not research or develop arguments on behalf of an appellant. *Hester, supra*.

## C. Medical Examiner

As his last claim regarding his trial counsel, Sims argues that counsel's performance was deficient because he failed to confront the medical examiner with differences in his testimony from the first to the second trial. Specifically, he contends that the medical examiner, when considering the pathway of the wounds, appeared to be more certain that the stab wounds were inflicted in a manner consistent with the testimony of the State's witnesses than the testimony of Sims. In denying this claim, the circuit court found that the substance of the medical examiner's testimony did not differ because he testified on both occasions that he could not say with complete certainty that the wounds were inflicted in the manner alleged by either party. We cannot say that the circuit court's finding is clearly erroneous. In so holding, we observe that trial counsel elicited from the medical examiner on cross-examination that he did not know where appellant was positioned when he stabbed the victim and that both the State's theory and the defense's theory were possible. There is

simply no merit to this point.

### V. *Hearing*

Sims also argues that the circuit court erred by not holding an evidentiary hearing on his petition. We disagree. Pursuant to Arkansas Rule of Criminal Procedure 37.3(a), the circuit court has the discretion to deny relief without a hearing. Stated differently, "the circuit court need not hold an evidentiary hearing where it can be conclusively shown on the record, or the face of the petition itself, that the allegations have no merit." *Mancia v. State*, 2015 Ark. 115, at 25, 459 S.W.3d 259, 275 (quoting *Bienemy v. State*, 2011 Ark. 320, at 5). As indicated by our discussions of the issues, the files and records of this case conclusively show that Sims's allegations that he received ineffective assistance of counsel are not well taken. Therefore, we affirm the circuit court's denial of the petition without a hearing.

Affirmed.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.